**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.,*<br><br>                                Debtors. | **Chapter 11**<br><br>**Case No. 08-13555 (SCC)** |
| LEHMAN BROTHERS HOLDINGS INC.,<br><br>                                Plaintiff,<br><br>-against-<br><br>1st ADVANTAGE MORTGAGE, LLC, *et al.*,<br><br>                                Defendants. | **Adv. Proc. No. 16-01019 (SCC)** |
| LEHMAN BROTHERS HOLDINGS INC.,<br><br>                                Plaintiff,<br><br>-against-<br><br>THE CROSSFIRE FINANCIAL NETWORK INC.,<br><br>                                Defendant. | **Adv. Proc. No. 19-01020 (SCC)** |

**MEMORANDUM OF LAW OF PLAINTIFF LEHMAN BROTHERS HOLDINGS INC.
IN OPPOSITION TO THE SUPPLEMENTAL MOTION OF DEFENDANT
CROSSFIRE FINANCIAL NETWORK, INC. TO DISMISS THE COMPLAINT
OR TO COMPEL A MORE DEFINITE STATEMENT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

PROCEDURAL HISTORY AND STATEMENT OF FACTS......................................................3

    A.    The Colorado Case Regarding Two Loans...................................................................3

    B.    The Governing Agreements..........................................................................................4

    C.    The RMBS Trustee Settlements....................................................................................5

    D.    The Current Indemnification Action .............................................................................6

ARGUMENT ...................................................................................................................................6

I.    APPLICABLE PLEADING STANDARDS ON A MOTION TO DISMISS UNDER
      RULE 12(B)(6) ....................................................................................................................6

II.   THE NARROW RELEASE IS NOT PROPERLY BEFORE THIS COURT ON A
      MOTION TO DISMISS AND, IN ANY EVENT, IS INAPPLICABLE TO THE PLAN
      ADMINISTRATOR'S CLAIM ............................................................................................7

    A.    The Narrow Release Is Not Properly Before the Court ................................................7

    B.    The Plan Administrator's Claim Is Not Covered by the Narrow Release ....................8

III.  CROSSFIRE IS NOT ENTITLED TO A MORE DEFINITE STATEMENT....................10

    A.    Legal Standard ............................................................................................................10

    B.    The Plan Administrator Set Forth Its Contractual Indemnification Claim With the
         Requisite Specificity ...................................................................................................11

IV.  THE ALLOWED CLAIMS FOR THE RMBS TRUSTEES IS A JUDGMENT FOR
      WHICH CROSSFIRE OWES CONTRACTUAL INDEMNIFICATION...........................13

V.   THE PLAN ADMINISTRATOR IS ENTITLED TO AN AWARD OF ATTORNEYS'
      FEES IN CONNECTION WITH THIS MOTION.............................................................15

CONCLUSION..............................................................................................................................16

## TABLE OF AUTHORITIES

**Cases**                                                 **Page(s)**

*Acco, Ltd. v. Rich Kids Jean Corp.*, 15 Civ. 7425 (JSR),
   2016 WL 3144053 (S.D.N.Y. Apr. 11, 2016) .................................................................. 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................................... 6, 7

*Asip v. Nielsen Media Research*,
   2004 U.S. Dist. LEXIS 2350 (S.D.N.Y. Feb. 17, 2004) .................................................. 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................................... 6, 7

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002) ............................................................................................. 7

*Conley v. Gibson*,
   355 U.S. 41 (1957) .......................................................................................................... 11

*Hahamovitch v. Hahamovitch*,
   174 So.3d 983 (Fla. 2015) ................................................................................................ 9

*In re Argo Commc'ns Corp.*,
   134 B.R. 776 (S.D.N.Y. 1991) ....................................................................................... 10

*In re Khachikyan*,
   335 B.R. 121 (Bankr. App. 9th Cir. 2005) ..................................................................... 14

I*n re Lehman Brothers Holdings, Inc.,*
   593 B.R. 166 (Bankr. S.D.N.Y. 2018) ............................................................................ 10

*In re Thelen LLP*,
   736 F.3d 213 (2d Cir. 2013) ............................................................................................. 7

*In re Waters*,
   2012 WL 1978304 n.18 (Bankr. D. Conn. 2012) ........................................................... 14

*Information Superhighway, Inc. v. Talk Am., Inc.*,
   274 F.Supp. 2d 466, 470 (S.D.N.Y. 2003) ....................................................................... 9

*McCarthy v. Dun & Bradstreet Corp.*,
   482 F.3d 184 (2d Cir. 2007) ............................................................................................. 6

*Owens v. Gaffken & Barriger Fund, LLC*,
  2009 WL 3073338 (S.D.N.Y. Sept. 21, 2009) .................................................................. 12, 13

*Scheuer v. Rhodes*,
  416 U.S. 232 (1974) ................................................................................................................ 7

*Sys., Inc. v. U.S.*,
  480 F.3d 621 (2d Cir. 2007) .................................................................................................. 14

*UNR Industries, Inc. v. Continental Cas. Co.*,
  942 F.2d 1101 (7th Cir. 1991) ............................................................................................... 14

*Zurich Am. Ins. Co. v. Tower Nat'l Ins.*,
  159 A.D.3d 418 (1st Dep't 2018) .......................................................................................... 14

**<u>Rules</u>**

Federal Rule of Bankruptcy Procedure 7012(b) ............................................................................ 1

Federal Rules of Bankruptcy Procedure 9001(7) ........................................................................ 14

Fed. R. Civ. P. 8 .......................................................................................................................... 12

Fed. R. Civ. P. 8(c)(1) .................................................................................................................. 8

Fed. R. Civ. P. 8(a) ............................................................................................................... 10, 11

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 1, 6

Fed. R. Civ. P. 12(e) ................................................................................................................ 1, 11

Fed. R. Civ. P. 54 ........................................................................................................................ 14

Plaintiff Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), the Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors, respectfully submits this memorandum of law, dated September 19, 2019, in opposition to the motion of defendant The Crossfire Financial Network Inc.'s ("Crossfire"), dated August 22, 2019, to dismiss the Complaint, dated February 1, 2019 (the "Complaint"), pursuant to Federal Rule of Bankruptcy Procedure 7012(b) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted and alternatively under Rule 12(e) of the Federal Rules of Civil Procedure for a more definite statement of a pleading (the "Motion" or "Crossfire Br.").

## PRELIMINARY STATEMENT

Crossfire's attempt to avoid its indemnification liability is unavailing and its motion to dismiss the Plan Administrator's complaint should be denied.

*First*, Crossfire contends that the settlement agreement between Aurora[1] and Crossfire concerning a two loan repurchase action in Colorado and the subsequent domestication of a judgment for enforcement in Florida from 2013 bars the Plan Administrator's claims for contractual indemnification regarding five different loans, which claims did not accrue until 2018. But the narrow release in the settlement agreement is entitled a "Limited Mutual Release" and the settlement agreement expressly states it only releases claims "concerning, relating to and/or arising out of the Judgment, Miami-Dade County case no. 2014-30726 CA 21, and/or Miami-Dade County Case No. 2015-000577 CA 05." The Colorado default judgment and Florida domestication of the default judgment cases concern two loans not at issue here. Crossfire strains to shoehorn the

---

[1] Capitalized terms not defined in the Preliminary Statement are defined in the Complaint or Procedural History and Statement of Facts.

five loans into the release by omitting key language. *See* below at 8-10. The five loans here have *no connection* to the Judgment or to the Miami cases.

*Second*, 12(e) motions for more definite statements are highly disfavored and inappropriate where, as here, the Plan Administrator has filed a detailed complaint, which describes the breaches and damages. The Complaint clearly alleges that Crossfire owed LBHI contractual indemnity under the 2006 LPA; that Crossfire owes LBHI indemnity for its liabilities, losses, claims, attorneys' fees, and judgments regarding the defective Crossfire Loans; and Crossfire's breaches of the 2006 LPA resulted in LBHI incurring liability and/or losses.

Crossfire complains that the Plan Administrator has not adequately alleged the breaches giving rise to its indemnification claims or the losses related to each loan. Crossfire is incorrect. The Plan Administrator satisfied its pleading burden regarding Crossfire's breaches by explaining that the Miculka Loan contained a misrepresentation of debt and the Davis Loan contained misrepresentations of income/employment and violations of the underwriting guidelines. *See* Complaint ¶¶ 33, 37, Ex. B, and Ex. C.

*Third*, Crossfire contends that because public records purportedly show that the Miculka and Davis Loans have not yet been foreclosed, no losses are attributable to these loans even if breaches existed. This argument misunderstands the documents. As explained in the Complaint, the agreements governing the securitization provided that the applicable RMBS Trustee may seek contractually defined repurchases of loans in the event certain breaches of representations and warranties occurred. Such breaches subjected LBHI to repurchase at the "Purchase Price." The governing agreements contain the definition of the Purchase Price that LBHI was contractually obligated to pay for breaching loans. Whether the loans were "foreclosed" was of no consequence. The damages amount for Miculka and Davis Loans reflect the amount the RMBS Trustees

2

calculated and claims it made against the Plan Administrator, which were ultimately resolved through the Estimation Proceeding.

*Fourth*, Crossfire argues that the Court's RMBS Order allowing the RMBS Trustee's claim does not trigger the Plan Administrator's indemnification claim. As set forth below, Crossfire is wrong as a matter of law. The RMBS Order that provided the RMBS Trustees' allowed claims qualifies as a judgment, liability, or loss under the LPA's indemnification provision. Crossfire also argues that the Plan Administrator is attempting to "bypass Crossfire's legal right to defend LBHI's claims" on the merits of each loan by "asserting the RMBS Settlement is somehow evidence that the five mortgage loans were defective." Such questions of burden and sufficiency of proof are not appropriately raised on a motion to dismiss.

For these reasons and as set forth below, Crossfire's motion must be denied and the Plan Administrator should be awarded reasonable attorneys' fees and costs under the "prevailing party" provision of the 2016 Settlement that Crossfire attempts to litigate.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

### A.    The Colorado Case Regarding Two Loans

On January 31, 2013, Aurora Bank, FSB f/k/a LBB ("Aurora") filed a complaint against Crossfire, *Aurora Bank FSB v. The Crossfire Financial Network, Inc.*, case no. 2013-cv-205 in the District Court of Douglas County, State of Colorado (the "Colorado Action"), alleging Crossfire materially breached its representations, warranties, and/or covenants under the Loan Purchase Agreement, dated February 23, 2006 ("2006 LPA") between Aurora, LBHI's assignor, and Crossfire. Bialek Decl. Ex. A at ¶ 16. Only two mortgage loans were at issue in the Colorado Action: Castro loan number ****9233 (the "Castro Loan") and the Givens loan No.

3

****5816 (the "Givens Loan"). *Id.* at ¶ 7.[2] Crossfire did not defend the Colorado Action and a default judgment was entered regarding the Castro and Givens Loans (the "Colorado Judgment"). *See* Crossfire Br. at 6. To enforce the Colorado Judgment against Crossfire, Aurora successfully domesticated the Colorado Judgment in Miami-Dade County, Florida. *See Aurora Bank FSB a/k/a Aurora Commercial Corp. v. Crossfire Financial Network, Inc.*, case no. 2014-0307206-CA-01 in the 11th Judicial Circuit (the "Florida Judgment"). Crossfire Br. Ex. 9.

On June 29, 2016, Aurora and Crossfire executed a settlement agreement to resolve the Colorado Judgment and Florida Judgment because "Crossfire desire[d] to avoid post-judgment collection action by Aurora." (The "Settlement Agreement"). *See* Crossfire Br. Ex. 2, p. 1 (Recitals). The "Mutual Limited Release" (*id.* ¶ 13) released claims "concerning, relating to and/or arising out of the Judgment, Miami-Dade County case no. 2014-30726 CA 21, and/or Miami-Dade County Case No. 2015-000577 CA 05 (the "Release")." The only claims involved in the Judgment were those arising out of the two loans.

**B.    The Governing Agreements**

LBB, LBHI's assignor, and Crossfire entered into the 2006 LPA for the purchase and sale of certain residential mortgage loans, which is governed by New York law. Complaint ¶ 12, 13; Crossfire Br. Ex. 1. The 2006 LPA expressly incorporates by reference the Seller's Guide. Complaint at ¶ 14. Crossfire sold to LBB the following loans: (i) No. 33509217; (ii) No. 33678798; (iii) No. 33689167; (iv) No. 40013070; and (v) No. 40214124 (the "Crossfire Loans"). *Id.* at Ex. B.

---

[2] The Castro Loan (Loan No. ****9233) in the Colorado Action was a second mortgage of approximately $54,000. The Plan Administrator's action, here, includes another Castro loan, but it is Loan No. 33509217 and was a first mortgage on the same property of approximately $288,820.00.

4

Under Sections 701, 703, and 717 of the Seller's Guide, Crossfire made certain representations and warranties about the quality and characteristics of the Crossfire Loans. Complaint ¶¶ 22 – 24, 26. Under Section 711 of the Seller's Guide, Crossfire was obligated to indemnify "Purchaser" for claims or losses resulting from "any act or failure to act or any breach of any warranty, obligation, representation or covenant" in the Seller's Guide or the 2006 LPA. *Id.* at ¶ 27. "Purchaser" is defined as LBB and its "successors and/or assigns" for any particular mortgage loan. *Id*. ¶¶ 18-20. Consequently, Crossfire was obligated to indemnify LBB and its assign LBHI for a breach of any representation or warranty under the Seller's Guide or LPA.

C.     **The RMBS Trustee Settlements**

When LBB acquired loans from Crossfire and others, it typically did not permanently hold those loans on its books. It sold loans acquired from Crossfire and other entities, including the Crossfire Loans, to LBHI, and then LBHI packaged those loans for securitization.[3] *Id.* at ¶ 28. In connection with these securitizations, LBHI relied on information that Crossfire provided to LBB, and it made its own representations and warranties to the securitization trusts, based, in part, on the representations Crossfire made to LBB. *Id.* at ¶ 29. The agreements governing the securitizations provide that the RMBS Trustee may seek contractually defined repurchases of loans if certain breaches of representations and warranties occurred. *Id.* at ¶ 30. Whether a loan was foreclosed did not impact LBHI's obligation to repurchase the breaching loan. After discovering breaches of representations and warranties in the loans underlying these securitizations, the RMBS Trustees filed proofs of claim to recover losses on the trusts, causing LBHI to incur judgments, costs, expenses, attorneys' fees, and liability. *Id.* at ¶¶ 31-33.

---

[3] Aurora did not sell the Castro and Givens loans to LBHI.

5

After years of extensive litigation and vigorous defense of these claims, LBHI entered into a settlement agreement with RMBS Trustees, under which it agreed to seek estimation of the liability arising from the claims in a proceeding before the Bankruptcy Court (the "<u>Estimation Proceeding</u>"). *Id.* at ¶ 35. In that Estimation Proceeding, the RMBS Trustees sought damages of over $11.4 billion based upon losses flowing from the at issue loans. *Id.* After the 22-day Estimation Proceeding trial, for which LBHI provided notice to Crossfire, the Court issued a 168-page opinion on March 15, 2018, in which it fixed the Plan Administrator's liability to the RMBS Trustees at $2.38 billion and entered the RMBS Order allowing a claim in that amount for the RMBS Trustees (the "<u>RMBS Order</u>"). *Id.*

### D.    The Current Indemnification Action

On February 1, 2019, the Plan Administrator commenced an action against Crossfire seeking contractual indemnification arising from the RMBS Trustees' allowed claim. As discussed below, the Complaint sets forth all the elements of its claim in detail.

**ARGUMENT**

### I.    APPLICABLE PLEADING STANDARDS ON A MOTION TO DISMISS UNDER RULE 12(B)(6)

When addressing a motion under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("When there are well pleaded factual allegations, a court should assume their veracity . . . ."). A complaint "does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Iqbal*, 556 U.S. at 678, but rather "only enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows

6

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. 662 at 678. "[A] well-pleaded complaint may proceed even if it appears 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

II. **THE NARROW RELEASE IS NOT PROPERLY BEFORE THIS COURT ON A MOTION TO DISMISS AND, IN ANY EVENT, IS INAPPLICABLE TO THE PLAN ADMINISTRATOR'S CLAIM**

   A. **The Narrow Release Is Not Properly Before the Court**

Under binding Second Circuit precedent, consideration of the Settlement Agreement and its narrow release, is not permitted on a motion to dismiss. "In adjudicating a motion to dismiss, a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)). "[A] plaintiff's *reliance* on the terms and effect of a document *in drafting the complaint* is a necessary prerequisite to the court's consideration of the document on a dismissal motion; *mere notice or possession is not enough*." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (italics added). The Plan Administrator has not, however, relied upon the Settlement Agreement (or its subject matter) in preparing the Complaint, nor does the Complaint indicate that it has. *See Assured Guar. Mun. Corp. v. RBS Sec., Inc.*, No. 13-CV-2019 (JGK) (S.D.N.Y. filed March 26, 2014), ECF No. 31, Transcript of Record at 47-48 (copy submitted in connection with this brief) ("[t]he release in this case is not a document in which the plaintiff relies, let alone heavily relies in drafting the amended complaint. . . . Therefore, without converting the present motion into one for summary judgment,

7

which neither party has requested, the Court declines to consider the release in adjudicating this motion to dismiss."). Bialek Decl. Ex. B.

Crossfire ignores this clear Second Circuit law and apparently seeks to overcome it by merely attaching the Settlement Agreement to its Motion. *See* Crossfire Br. Ex. 2. Attaching the Settlement Agreement to the Motion does not properly place it before the Court at this stage of the proceeding. The proper procedural posture for consideration of the Release is as an affirmative defense in Crossfire's answer. *See* Fed. R. Civ. P. 8(c)(1).

**B.     The Plan Administrator's Claim Is Not Covered by the Narrow Release**

Although the Release should not be considered on this Motion, because Crossfire has raised it, the Plan Administrator will address it here. Despite Crossfire's claims to the contrary, the scope of the Limited Release is narrow. *See* Crossfire Br. at 3 (incorrectly referring to the Release as a "broad release"). The narrowness of the Release is underscored by its title "Mutual Limited Release." Moreover, the Settlement Agreement limits the Release to claims "concerning, relating to and/or arising out of the Judgment" or "Miami-Dade County case[s]."

Section 13 of the Settlement Agreement provides, in full:

> **Mutual Limited Release.** Except for the Parties' rights and obligations under this Agreement, the Parties hereby presently, fully and finally, release, acquit, satisfy and forever discharge each other and any prior servicers or loan investors, and their attorneys, insurers, assignees, transferors, transferees, principals, partners, officers, directors, employees, servants, as well as their past and present parent companies, affiliates, sister corporations, subsidiaries, shareholders, directors, employees, agents, representatives, predecessors, successors, assigns, attorneys, and all persons acting by, through or under them, or any of them, from any and all claims, manner of action and actions, cause and causes of action, suits, debts, sums of money, accounts, covenants, conflicts, controversies, agreements, promises, claims, demands, damages, liens, levies and executions, whether known or unknown, liquidated or unliquidated, fixed, contingent, direct or indirect, in law or in equity, which the parties ever had, now have, or which any successor or assign of the Parties hereafter can, shall or may have, upon or by reason of any manner, cause or thing whatsoever, from the beginning of the world to the date of this Agreement *concerning, relating to and/or arising out of the Judgment, Miami-Dade County*

8

*case no. 2014-30726 CA 21, and/or Miami-Dade County Case No. 2015-000577 CA 05.* Nothing in this Mutual Limited Release shall be construed to release Crossfire from the Judgment in the event of Crossfire's default under this Agreement.

Crossfire Br. Ex. 2 at ¶ 13 (underscoring and bold in original; italics added). Tellingly, Crossfire does not reference the title "Mutual Limited Release" or even attempt to explain the significance of the limitation to the "Judgment" or "Miami-Dade County case[s]."

Crossfire erroneously contends that this Court should rule, as a matter of law, that the "release clause contemplated other potential breaches of the 2006 LPA" (Crossfire Br. at 9). The Settlement Agreement is interpreted under Florida law. Crossfire Br. Ex. 2 at ¶ 14. Under Florida law, "[w]here a contract is clear and unambiguous, it must be enforced pursuant to its plain language . . . . In such a situation, the language itself is the best evidence of the parties' intent, and its plain meaning controls." *Hahamovitch v. Hahamovitch*, 174 So.3d 983, 986 (Fla. 2015). The narrow Release is clear and unambiguous and only releases the parties from claims relating to the Colorado Judgment and Florida cases, which only concerned the Castro and Givens Loans, which are not at issue here. The Settlement does not release the Plan Administrator's claim as to the five other Crossfire Loans.[4]

Crossfire also argues that the Plan Administrator's claims are covered by the narrow

---

[4] To the extent the Court finds the Release is ambiguous, which it should not, resolution of the parties' competing interpretations of the Release is not proper on this motion. As Judge Sweet held in *Information Superhighway, Inc. v. Talk Am., Inc.*:

> Under New York law, a release – like any contract – must be construed in accordance with the intent of the parties who executed it. A release will not be given effect unless it contains an explicit, unequivocal statement of a present promise to release [a party] from liability. Moreover, because the law looks with disfavor upon agreements intended to absolve [a party] from the consequences of his [wrongdoing], *a release which purports to excuse a party from responsibility for misconduct is subject to the closest of judicial scrutiny. Under this standard of scrutiny, therefore, an ambiguous release may not form the basis for a motion to dismiss.*

274 F.Supp. 2d 466, 470 (S.D.N.Y. 2003) (citations and quotation marks omitted) (italics added). In that case (unlike this case), the plaintiff actually pleaded the existence of the release in its complaint, thus making it appropriate to consider on a motion to dismiss. *Id.* at 469 ("the amended complaint now refers to the April 6, 2000 release").

9

Release because "a release of 'unknown' claims applies to events that have accrued" (Crossfire Br. at 8), and because Aurora was aware of defects in the five Crossfire Loans before the Settlement Agreement was executed (*id.* at 9). Neither argument is persuasive.

*First*, as this Court has ruled, the Plan Administrator's indemnification claims accrue after liability is fixed. *In re Lehman Brothers Holdings, Inc.*, 593 B.R. 166, 177 (Bankr. S.D.N.Y. 2018) (holding that "LBHI's Indemnification Claims against each Defendant did not accrue until its liability to the GSEs was fixed upon entry of the GSE Settlement Orders in early 2014"). Here, the Plan Administrator's claims did not accrue until 2018 when liability was fixed, at the earliest. (Order Estimating Allowed Claim Pursuant to RMBS Settlement Agreement, Case No. 08-13555, Dkt. No. 57785).

*Second*, the fact that Aurora was aware of the defaulted Crossover Loans has nothing to do with whether the RMBS Trustees had put back the loans to the Plan Administrator and whether those claims had accrued.

### III.   CROSSFIRE IS NOT ENTITLED TO A MORE DEFINITE STATEMENT

#### A.   Legal Standard

Under Fed. R. Civ. P. 8(a), a complaint need contain only a short, plain statement of the claim, indicating that the plaintiff is entitled to relief. "[A] motion for more definite statement is generally discouraged." *In re Argo Commc'ns Corp.*, 134 B.R. 776, 798 (S.D.N.Y. 1991). The Federal Rules disfavor motions to compel more definite complaints and instead "encourage the use of discovery procedures to apprise the parties of the basis for the claims made in the pleadings." *Asip v. Nielsen Media Research, Inc.,* No. 03 Civ. 5866, 2004 U.S. Dist. LEXIS 2350, at *7 (S.D.N.Y. Feb. 17, 2004) (citations omitted). Rule 8(a) merely requires that a plaintiff provide a defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests."

10

*Conley v. Gibson*, 355 U.S. 41, 47 (1957). Thus a Rule 12(e) motion should be denied if a complaint comports with the liberal pleading requirements of Rule 8(a) unless the complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it. *Acco, Ltd. v. Rich Kids Jean Corp.*, 15 Civ. 7425 (JSR), 2016 WL 3144053, at *4 (S.D.N.Y. Apr. 11, 2016) (holding that the "purpose of the rule is to remedy unintelligible pleadings, not to correct for lack of detail" and that a "Rule 12(e) motion is not a substitute for discovery") (internal citations and quotations omitted).

Here, the Plan Administrator's Complaint is adequately pled and is not "so vague and ambiguous" that Crossfire cannot prepare a proper response. Fed R. Civ. P. 12(e).

### B. The Plan Administrator Set Forth Its Contractual Indemnification Claim With the Requisite Specificity

The Plan Administrator's contractual indemnification claim is neither vague nor ambiguous. It pleads sufficient facts to permit Crossfire to prepare a response. Tellingly, the Plan Administrator filed 174 substantially similar complaints and Crossfire is the only defendant to make such an argument.

The Plan Administrator alleged these facts in its complaint: LBB, LBHI's assignor, and Crossfire entered into the 2006 LPA for the purchase and sale of certain residential mortgage loans. Complaint at ¶ 12. Under the incorporated Seller's Guide, Crossfire made certain representations and warranties about the quality and characteristics of the Crossfire Loans. *Id.* at ¶¶ 14-16. Under Section 711 of the Seller's Guide, Crossfire was obligated to indemnify "Purchaser" for claims, judgments, or losses resulting from "any act or failure to act or any breach of any warranty, obligation, representation or covenant" in the Seller's Guide or the LPA. *Id.* at ¶ 27.

The Crossfire Loans, with other loans, were packaged for securitization. *Id.* at ¶ 28. In connection with these securitizations, LBHI relied on information provided by Crossfire when

11

LBHI made its own representations and warranties to the RMBS Trustees. *Id.* at ¶ 29. After discovering breaches of representations and warranties in the loans underlying these securitizations, the RMBS Trustees filed proofs of claim to recover losses on the trusts, causing LBHI to incur judgments, costs, expenses, attorneys' fees, and liability. *Id.* at ¶¶ 31-33. After 22 days of trial at the culmination of the Estimation Proceeding, the Court issued the RMBS Order, which fixed the Plan Administrator's liability. *Id.* at ¶ 35.

To meet the requirements of Rule 8, a complaint alleging contractual indemnification need only state (i) the existence of a contract; (ii) that the [defendant] failed to perform his or her obligations; (iii) that the [plaintiff] has performed his or her obligations under the contract; and (iv) resulting damages to the [defendant]." *Owens v. Gaffken & Barriger Fund, LLC*, 2009 WL 3073338, at *14 (S.D.N.Y. Sept. 21, 2009). The Plan Administrator alleges each element.

Crossfire moves for a more definite statement about the Miculka and Davis loans, contending that LHBI has not adequately alleged the breaches giving rise to its indemnification claims or the losses related to each loan. Crossfire Br. at 10. Crossfire's arguments fail.

The Plan Administrator satisfied its pleading burden. The Complaint alleges that the Miculka Loan contained misrepresented debts, and the Davis Loan contained misrepresentations of income/employment and violations of underwriting requirements. Complaint at ¶¶ 33, 37; Complaint Ex. B; Complaint Ex. C. Exhibit C further explains that "MISREP-DEBTS" means "one or more debts opened by the borrower prior to close of the subject transaction and/or sale of the subject loan were undisclosed/misrepresented at origination, which non-disclosure/misrepresentation formed the basis of Defendant's breach." *See* Complaint Ex. C. Exhibit C explains that "MISREP – INCOME/EMPLOY" means "[t]he borrower's income at origination and/or information concerning his/her employment at origination was

12

omitted/misrepresented, which omission/misrepresentation formed the basis of Defendant's breach."[5] *Id.* This pleading easily satisfies the liberal pleading standard and does not require a more definite statement.

Crossfire also contends that public records for the Miculka and Davis loans "suggest the mortgages may still be in existence, are not foreclosed or satisfied, and are currently serviced by Nationstar," and thus no losses can be attributed to these loans even if breaches existed. Crossfire Br. at 10. This argument is incorrect. As the Court is aware from the Estimation Proceeding, Mortgage Loans that materially breached LBHI's representations and warranties to the RMBS securitizations were subject to repurchase at the "Purchase Price" that LBHI was contractually obligated to pay for breaching loans. Whether the loans were "foreclosed" was of no consequence. The damages amount for the Miculka and Davis loans reflect the RMBS Trustees' claims against the Plan Administrator, which ultimately lead to an allowed claim of $2.38 billion.[6]

## IV. THE ALLOWED CLAIMS FOR THE RMBS TRUSTEES IS A JUDGMENT FOR WHICH CROSSFIRE OWES CONTRACTUAL INDEMNIFICATION

Crossfire's contention that the RMBS Settlement in which the Plan Administrator did not admit liability somehow precludes the Plan Administrator's indemnification claim, (Crossfire Br. at 11), misses the mark. The Plan Administrator seeks to enforce its right to contractual indemnification for liabilities, losses, damages, claims, judgments and any other costs, fees and expenses the Plan Administrator incurred because of Crossfire's sale of defective mortgage loans

---

[5] Exhibit C explains that "UW – OTHER" means that the transaction "violated one or more underwriting" requirements. Complaint Ex. C.

[6] As described in the Estimation Hearing, the "Purchase Price" for non-liquidated loans was calculated by (1) identifying the unpaid principal balance less all principal payments and principal advances as of the end of the reporting month (the "end balance"); (2) adding any forgiven principal amounts resulting from loan modifications to the end balance; (3) adding any accrued and unpaid interest at the applicable mortgage rate to the sum of (1) and (2); and (4) adding any unreimbursed principal and interest advances and other reimbursed servicing advances to the sum of (1)-(3).

13

in breach of its representations and warranties. Complaint at ¶ 1. The RMBS Order resolved the majority of the RMSB Trustees' claims and created allowed claims. These allowed claims triggered the Plan Administrator's right to contractual indemnification. *See, e.g., UNR Industries, Inc. v. Continental Cas. Co.*, 942 F.2d 1101, 1104 (7th Cir. 1991) (holding that the debtor's requirement to pay claims in its bankruptcy proceedings "resulted in a judgment or settlement"); *EDP Med. Comput. Sys., Inc. v. U.S.*, 480 F.3d 621 (2d Cir. 2007) (allowed claims equaling final judgments for res judicata purposes); *In re Waters*, 2012 WL 1978304, at *7 n.18 (Bankr. D. Conn. 2012) ("What the IRS is requesting in this contested matter technically is the court's entry of a final order rather than a judgment. However, a final order of this court constitutes a "judgment" within the meanings of Rule 54 of the Federal Rules of Civil Procedure and Rule 9001(7) of the Federal Rules of Bankruptcy Procedure."); *In re Khachikyan*, 335 B.R. 121, 125-26 (Bankr. App. 9th Cir. 2005) (in contested matters "an order [] has the status of a judgment").

Crossfire also argues that the Plan Administrator is attempting to "bypass Crossfire's *legal right* to defend LBHI's claims" on the merits of each loan by "asserting the RMBS Settlement is somehow evidence that the five mortgage loans were 'defective.'" Crossfire Br. at 11. Such questions of the burden and level of proof are not appropriately before the Court on a motion to dismiss.[7]

---

[7] Under New York law, when an indemnitor (Crossfire) receives notice of a claim and proposed settlement, the indemnitee (Plan Administrator) may recover from the indemnitor (Crossfire) if it establishes that the settlement was reasonable and entered into in good faith. *Zurich Am. Ins. Co. v. Tower Nat'l Ins.*, 159 A.D.3d 418, 419 (1st Dep't 2018).

14

## V. THE PLAN ADMINISTRATOR IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES IN CONNECTION WITH THIS MOTION

Crossfire's request for attorneys' fees should be denied. Crossfire Br. at 12. Instead, the Plan Administrator should be granted its reasonable attorneys' fees in opposing this motion regarding the limited Release. The Settlement Agreement provides for an award of attorneys' fees to the "prevailing party" in litigation arising out of or relating to the Settlement Agreement:

> **Attorney's Fees**. In connection with any litigation . . . arising out of or relating to this Agreement or its enforcement, the prevailing party shall be entitled to recover from the other party its costs and reasonable attorneys' fees.

Crossfire Br. Ex. 2 at ¶ 17. As demonstrated above, the relief requested in the Motion based upon the Release in the Settlement Agreement should be denied in its entirety. Upon the denial of this motion to dismiss based upon the Settlement Agreement, this Court should declare the Plan Administrator the prevailing party and award the Plan Administrator its reasonable costs and attorneys' fees on the Motion relating to the limited Release.

## CONCLUSION

LBHI respectfully requests that Defendant's Motion to Dismiss be denied in its entirety and this Court enter an order declaring the Plan Administrator is entitled as prevailing party under the Settlement Agreement to an award of its reasonable attorneys' fees and costs in connection with opposing this Motion to Dismiss.

Dated: New York, New York
September 19, 2019

/s/ Adam M. Bialek
William A. Maher
James N. Lawlor
Adam M. Bialek
Brant D. Kuehn

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050

*Counsel for Lehman Brothers Holdings Inc.*